# Good Roads Machinery Company, Appellant, *v.* Union Township.

*Townships—Supervisors—Contract—Evidence.*

In an action against a township to recover the price of a rock crusher sold under a warranty that it would do certain work specified, evidence to the effect that one of the two supervisors who bought the machine was "satisfied to accept and settle for it" is immaterial and irrelevant, inasmuch as the acceptance by one supervisor without the concurrence of the other will not bind the township. In such a case the only question is whether the machine did the work it was warranted to do.

The two supervisors of a township signed a written contract for the purchase of a stone crusher. In an action against the township to recover the purchase money, one of the supervisors testified that before the contract was signed, the plaintiff's agent, in reply to his inquiry,

said that an eight-horse power engine would do to run the machine. At a test made after the delivery of the machine it was found that an eight-horse power engine would run it, but not perhaps to the limit of its efficiency. The witness was asked whether or not he would have signed the contract or any other contract for a stone crusher, if the agent had not made that statement. The supervisor thus testifying was not satisfied that the machine came up to the requirements of the warranty given at its sale. After his term of office had expired, a second test was made to the satisfaction of the other supervisor who had been a party to the purchase of the machine. *Held,* that it was error to permit the supervisor to testify that he would not have signed the contract if the agent had not made the statement in question.

If all the supervisors of a township meet and consult together in reference to the purchase of a road machine, and then join in a contract for the purchase of the machine, the vendor of the machine is not bound to show affirmatively that the supervisors did their full duty. If there be no fraud or collusion, and no conduct on his part by which he knowingly induced them to forego that deliberation and the exercise of that judgment and discretion in the interest of the township which the law requires of them, he has a right to act upon the presumption that they did their duty; he is not bound to be present at their meeting and see that they did.

Argued May 16, 1907. Appeal, No. 75, April T., 1907, by plaintiff, from judgment of C. P. Lawrence Co., Sept. T., 1904, No. 123, on verdict for defendant in case of the Good Roads Machinery Company v. The Township of Union, William Botham and Ira Gibson, supervisors. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit to recover the price of a rock crusher. Before PORTER, P. J.

The facts are stated in the opinion of the Superior Court.

When William Botham, one of the supervisors, was on the stand, he was asked this question :

" Q. Was that a satisfactory test to you of the ability of that machine to do its work as the contract provided ? "

Objected to as a conclusion, and that is for the jury. '

The Court. The witness has stated that the machine did, and the jury can determine whether it did the work provided for in the contract. Exception. [1]

" Q. Did the test disclose the fact that the machine would do what the contract specified it would do ? A. I stated that it

did—it crushed a load of stone of 3,500 weight—3,000 weight, at least, in six minutes, and multiply that it would take from twelve to fifteen—twelve to fifteen tons an hour is what the contract specified."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

" Q. Were you satisfied to accept, and settle for the machine."
Objected to.

The Court: We have here the contract of the parties. The witness will be permitted to testify what work the machine did at the test. It is for the jury after hearing the facts under the contract as to what it did—whether after hearing of the work the machine did—the contract has been complied with. The conclusion is for the jury.

Mr. Castle (for plaintiff). He being an officer of the township, would the township not be bound by his judgment in the matter?

The Court: It would if both officers, in a properly called meeting, concluded on it. As the matter stands the objection is sustained, and an exception sealed for the plaintiff. [2]

Lawrence Truesdell, the other supervisor, was asked this question:

" Q. In that conversation that you had at the road with Mr. McKean and Blackstone, what was said with reference to engines, Lawrence? A. Well, now, I asked him particularly what sized engine it took; I told him what kind we had in the township—we only had the one, and it was an eight-horse power—well, he said: 'That would do to run it.' Q. That was said before the paper was signed? A. Yes, sir, we had an engine of our own, in our own township, and I thought we wouldn't have to go out of our own township if anything turned up. Q. Would you or not have signed the contract, or any other contract for a stone crusher if he had not said an eight-horse power engine would run it?"

Objected to as incompetent, irrelevant and immaterial; it being simply a question what witness did.

The Court: We will admit the question and seal an exception for the plaintiff. [3]

Question read the witness.

" A. No, I hardly believe I would, because that was a benefit to the township."

The court charged in part as follows:

[It is proper and right that those who represent the interest of the people should honestly confer, and fairly deliberate, and arrive at a conclusion, and having arrived at a conclusion, to act upon it. For instance: No doubt when you gentlemen retire to your jury room you may disagree as to this case; some of you having one view and some another; yet when you confer and deliberate your attention will be called to some fact or facts that you may have overlooked in your consideration, and yet when your attention is called to this fact or some other fact, then you see the matter as the one who presents the subject to you sees it. This, gentlemen, is deliberation. Consider the various phases of the question involved. You have the combined judgment of each member of the jury, and when you have that combined judgment, and you agree, then you agree upon a verdict. So that if these gentlemen as supervisors met together, discussed the subject under consideration and arrived at a conclusion, that conclusion is what they acted upon. We believe with this explanation you will have no difficulty in understanding what we mean when we say, that in order to hold this defendant township, you must find that the township supervisors honestly conferred and deliberated, arrived at a conclusion, and acted upon it.] [4]

[And this brings us to the question as to whether or not at the meeting, or in that talk, the supervisors of Union township, as supervisors, did honestly confer, and fairly deliberate upon the question of the purchase of a stone crusher. You have heard the testimony of Mr. Botham, as well as the testimony of Mr. Truesdell, as to what took place at that meeting when they, as supervisors, were there by themselves. In determining whether or not the supervisors did honestly confer, and fairly deliberate, you will take the testimony, not only of what took place while Mr. Botham and Mr. Truesdell were together, alone, but also the conversation that took place at the side of the buggy, and from all the testimony arrive at a conclusion as to whether or not it was fairly concluded, after deliberation on the part of the supervisors, that they would purchase this stone crusher, provided it did the work as represented, or warranted in this contract.] [5]

Defendant presented these points;

2. Union township has two supervisors, and consultation and deliberation on their part as a board of supervisors is just as necessary and mandatory as in townships having three or more supervisors, and they are required to honestly confer together and fairly deliberate in the interests of the taxpayers before they attempt to bind the township by their action, and those who deal with the township supervisors must take care to have the honest judgment of those to whom is intrusted the transaction of the public business. *Answer:* Affirmed. [6]

4. If the jury find from all the evidence that the supervisors of Union township did not honestly and fairly deliberate together and hold a conference in which they compared views and interchanged ideas as to the purchase of the stone crusher, their action does not bind the defendant township, and the plaintiff cannot recover. *Answer:* Affirmed. [7]

5. The supervisors of Union township could not bind the township of Union unless they as supervisors honestly and fairly conferred together on the subject of the purchase of the stone crusher, and if the jury find from the evidence that the alleged contract was entered into by the supervisors of Union township without a comparison of views and interchange of ideas as a board of supervisors, but that they acted individually and separately, the contract was void and the plaintiff cannot recover. *Answer:* Affirmed. [8]

8. The signing of the written order by the supervisors cannot bind the township of Union if the supervisors did not properly deliberate and honestly confer together as supervisors, and if the jury find that the order was signed by the supervisors without proper deliberation and a fair conference in which they exchanged views and interchanged ideas, their action cannot bind the township, and your verdict should be for the defendant. *Answer:* Affirmed. [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4–9) above instructions, quoting them.

*James M. Martin*, with him *A. L. Hazen*, for appellant.— Those contracting with public officers are not obliged to inquire beyond their general authority to make the contract:

Harshman v. Dunbar Twp., 11 Pa. Superior Ct. 638; Climax Road Machine Co. v. Allegheny Twp., 10 Pa. Superior Ct. 437; Childs v. Brown Twp., 40 Pa. 332; Oakland Twp. v. Martin, 104 Pa. 303; Austin Mfg. Co. v. Ayr Twp., 24 Pa. Superior Ct. 91.

*H. K. Gregory*, with him *R. K. Aiken* and *T. W. Dickey*, for appellee, cited: Austin Mfg. Co. v. Ayr Twp., 31 Pa. Superior Ct. 356; Western Wheeled Scraper Co. v. Butler Twp., 24 Pa. Superior Ct. 477; Logan v. Rochester Twp., 21 Pa. Superior Ct. 113.

OPINION BY RICE, P. J., October 7, 1907:

In November, 1902, William Botham and Lawrence Truesdell, the two supervisors of the defendant township, and acting as such, signed and delivered to T. L. McKean, the plaintiff's agent, an order to ship to them as soon as possible a No. 4 Champion rock crusher, on the following conditions: "On the arrival of said rock crusher at the above-named R. R. station, the undersigned hereby agree to set up the crusher and there work it under the directions of the Good Roads Machinery Company's agent, unless otherwise agreed; when if the said crusher does work as warranted on the back of this order, the undersigned hereby agree to pay to the Good Roads Machinery Company, or order, Nine hundred fifty dollars in cash or note, bearing interest at the rate of 6 per cent. per annum from the date of trial, payable at National Bank of Lawrence County. If the crusher does not do the work as warranted, then the Good Roads Machinery Company agrees to receive back the crusher at the railroad station from which it was taken and cancel this contract. It is understood that this contract embodies the entire understanding, is not subject to countermand and is not to be affected by any verbal contract." By indorsement on the back of the paper the plaintiff warranted, inter alia, that the machine would crush, under ordinary circumstances in regular and practical work, from twelve to eighteen tons of stone per hour. In due time the machine was shipped by rail to the station specified in the order and from there was hauled by one of the supervisors to the township, where it was set up and a test was made. Before making it the plaintiff's

agent objected that the engine furnished by the supervisors was not of sufficient horse-power; nevertheless the working of the machine seems to have been satisfactory to Botham, but not so to Truesdell. It was then agreed to have another test with a more powerful engine, but owing to the weather this was delayed until spring. In the meantime Truesdell's term of office expired and he was succeeded by Ira Gibson. Gibson had due notice of the second test, but he refused to have anything to do with the matter. The test was made in his absence, but in the presence and under the direction of Botham and the plaintiff's agent, and in the presence of other citizens of the township; and according to the uncontradicted testimony it showed that the machine was up to the warranty. So far as appears the supervisors made no attempt or offer to redeliver the machine to the plaintiff at the railroad station, as the terms of the contract provided in the event of its not doing the work as warranted. Although there was no substantial dispute as to any of the foregoing facts, the jury found for the defendant, and from the judgment on their verdict we have this appeal.

Under the contract between the plaintiff and the supervisors, the condition was that the machine would do certain work, not that it would do the work to the satisfaction of the supervisors. If upon a proper test it was found that it could not do the work, one supervisor could not waive the condition and bind the township by an acceptance in which his associate did not concur. On the other hand, one supervisor could not prevent consummation of the sale by arbitrary refusal to join in the second test that had been agreed upon. The question was whether the machine did the work it was warranted to do. If it did, the condition was fulfilled. If it did not, it was not fulfilled. In either event, the fact that the supervisor, who was present at the second test, was "satisfied to accept and settle for the machine," was immaterial and irrelevant. Therefore, the court committed no error in rejecting the offers to prove it, and in confining the testimony to the question whether the machine did the work the contract specified it would do.

Truesdell, the only witness called by the defendant, testified that before the contract was signed the plaintiff's agent, in reply to his inquiry, said that an eight horse-power engine would do to run the machine. The witness was then asked whether

or not he would have signed the contract or any other contract for a stone crusher, if the agent had not made that statement. To which, under objection and exception, he answered: "No, I hardly believe I would because that was a benefit to the township." If the offer had been to prove precisely what the witness testified, namely, his present belief as to what he would have done, we assume that the court would have rejected it. Such testimony was clearly incompetent to affect the written contract. This need not be discussed. But as no motion was made to strike out the testimony, it would be unfair to reverse the case upon this assignment, if the question put to the witness was a permissible one. It certainly was not relevant to ask him whether he would have signed any other contract. To that extent the question was plainly objectionable. Was it permissible to ask him whether or not he would have signed the contract in question, if the plaintiff's agent had not made the alleged statement? It is objected by the appellant's counsel that the question presupposes an answer involving an operation of the mind and not susceptible of contradiction, and, therefore, should have been excluded. There are two classes of cases bearing upon the general question of the admissibility of testimony of this character which will be appropriate to review. We shall refer first to some of the cases wherein the testimony of a party as to his motive, belief or intent has been held to be competent, and then to cases of the other class.

In an action to recover the amount of money which the defendant received upon an assignment obtained by misrepresentation and fraud, it was held competent to prove by the testimony of the assignor that he acted in confidence of the truth of the defendant's misrepresentations; "for" said Chief Justice GIBSON, "unless he was injured by the deceit, it could give him no right of action:" Cummings v. Cummings, 5 W. & S. 553. In Commonwealth to use v. Julius et al., 173 Pa. 322, which was an action on a guardian's bond, the defendants set up a release executed by the ward after she became of age, and she alleged that she was induced to sign it by certain false and fraudulent representations, especially that her counsel agreed to the advisability of such a settlement, and that one of them had said she would probably get little or nothing out of her case by further litigation. In connection with testimony as to

the representations and their falsity, she was permitted to testify that they were the inducement to her action. This was held not to be error. In Weaver v. Cone, 174 Pa. 104, which was an action to recover damages for a loss occasioned by a false and fraudulent representation by the defendant which induced the plaintiff to sell his stock at less than its market value, it was held to be proper for the plaintiff's counsel to ask him what it was that induced him to sell the stock at the price which he did. In Bartley et al. v. Phillips, 179 Pa. 175, which was an action of ejectment for oil and gas lands in which the plaintiffs claimed under a lease from the owner and the defendant claimed under a later lease from a grantee of the same owner, it was held to be competent for the plaintiffs to testify that in removing certain materials from the land they had no intention to abandon the lease.

It will be observed that in three of the foregoing cases there was an allegation of false and fraudulent representations which induced the party's action, and that in the fourth the intention of the party determined the character of his action.

On the other hand, in an action upon bonds accompanying a mortgage for the purchase money of real estate, wherein it was alleged that at the time when the papers were delivered it was agreed that the plaintiff would look to the land alone for the whole purchase money and that any judgment or judgments that should be obtained on the bonds should be liens only on that land, it was proposed to ask the defendant, "What was the inducement that led you to sign the bonds and mortgage?" and "Did you sign these bonds and the mortgage, relying at the time upon the contemporaneous agreement in parol?" and "In consequence of the acts and declarations of Mr. Colt, did you sign these papers?" The rejection of the offers was held to be proper. Speaking of these rulings Justice WOODWARD said: "Everything that was said and done at the time when the bonds and mortgage were executed, was received. The unexpressed intent, motive or belief existing in Mr. Mauser's mind when he signed the papers, could not aid the jury in ascertaining whether the language or conduct of the plaintiff had been such as to create such an intent, motive or belief. The parties to a contract may often have different impressions regarding its effect upon their respective

interests, but the thoughts of one certainly cannot be proved
to bind the other:" Spencer v. Colt, 89 Pa. 314. So in an
action by a building association against a surety on a bond
given to secure a loan made by the association to a member it
was held to be reversible error to allow the defendant to be
asked whether he would have signed the bond if it had not
been agreed at a meeting of the board of directors that cer-
tain real estate should be mortgaged as security for the loan
and be first liable for its repayment. In the course of his dis-
cussion of the question, Justice TRUNKEY said: "When the
doing of the act is not disputed, but is affirmed, and whether
the act shall be held valid or invalid hangs upon the intent
with which it was done, which intent, from its nature, would
be formed and held without avowal, then he, upon whom the
intent is charged, may testify whether he secretly held such
intent when he did the act. This does not apply to the mak-
ing of contracts, and a party to a contract shall not testify his
undisclosed purpose or intention to nullify words and acts re-
lied upon by others, which in themselves prima facie evidence the
agreement:" Juniata Building & Loan Association v. Hetzel,
103 Pa. 507. In an action upon a written contract for the manu-
facture and delivery to the defendant of certain farming im-
plements, the defense was set up that there was a contempo-
raneous oral agreement that the defendants should have the
absolute right to countermand the order at any time before a
certain date, and that they had countermanded it. It was
held that proof of this agreement was competent, but that the
defendant's testimony that it was the sole inducement for his
signing of the contract was not. In reversing the judgment
because of the admission of this testimony the court said: "It
was competent to prove all that was said and done. It was
for the jury to determine from what was said and done at the
making of the contract whether the oral agreement, if proved,
induced the defendants to sign the written one. The defend-
ants are not permitted to testify their unexpressed intent,
motive or belief, at the time they signed the contract:"
Thomas & Sons v. Loose et al., 114 Pa. 35. To the same
effect is Cullmans et al. v. Lindsay et al., 114 Pa. 166. In
Cake v. Pottsville Bank, 116 Pa. 264, which was an action by
the payee of a note against the indorser, it was held competent

to show by parol evidence that when the note was made, indorsed and delivered, the plaintiff's agent procuring the note agreed with the defendant that he should not be held liable on his indorsement, but the payee would look to collateral security agreed to be given, but that it was not competent for the defendant himself to testify that he "would not have indorsed the notes had it not been for the express stipulation that he should not be liable thereon."

Three of the five cases last cited were reviewed by the present chief justice in Commonwealth v. Julius, and Juniata Building & Loan Association v. Hetzel was again considered in Bartley v. Phillips. We do not understand these latter cases to overrule the cases that are therein reviewed and distinguished. It therefore devolves upon us to determine to which class the present case belongs. The weight of the testimony goes to show that the plaintiff's agent did not say that an eight horse-power engine would run the machine. But suppose he did, it is evident that the statement was as to the power that would be required at the test that was to be made, and was not such a fraudulent misrepresentation as would sustain an action for deceit. Strictly speaking, it was not even untrue, because the engine did run the machine, although not to the satisfaction of Truesdell, and perhaps not to the full standard of efficiency specified in the warranty. Moreover, a second test was agreed upon. These considerations lead to the conclusion that the case does not fall within the principle applicable where false and fraudulent representations are set up as the inducement of the party's action, and no argument is required to show that it does not fall within that class of cases to which the principle is applicable that where the legal character of an act is determined by the intent with which it is done, the person doing the act may testify as to his intention at the time. The statement alleged to have been made by the plaintiff's agent was not even a collateral promise or undertaking, such as was shown in Spencer v. Colt or cases of that class, and, even if it could be so construed, these cases show that the testimony of the supervisor as to what he would have done if the statement had not been made would be inadmissible. A fortiori, it was not competent in this indirect way to prove that he interpreted it as a promise or undertaking on the part of the

plaintiff, and that he would not have made the contract had it
not been for the influence that it had upon his judgment. We
conclude that the objection to the question should have been
sustained, and we are unable to say that the answer was so in-
definite as to render the error harmless.

The remaining assignments relate to the charge of the court
and the affirmance of the defendant's points, and may be con-
sidered together. The facts are, without reciting unimportant
details, that the two supervisors and the plaintiff's agent met
and consulted with regard to the purchase of a machine, and
in the course of their discussion the plaintiff's catalogue was
exhibited and different sizes of machines were considered.
The plaintiff's agent then prepared the contract in question
and read it to the supervisors. The supervisors then took the
paper and withdrew some distance from the plaintiff's agent,
and after conferring together for a short time returned, and
then and there signed and delivered the paper to the plain-
tiff's agent. Viewing the instructions to the jury in the
light of these facts, and of the facts recited in the former
part of this opinion, we think the case was submitted to the
jury upon a wrong theory as to what the plaintiff was bound
to prove to make out a prima facie case, and as to what would
rebut the prima facie presumption arising from the facts above
stated. For example, the jury was instructed that supervisors
" are required to honestly confer together and fairly deliberate
in the interests of the taxpayers before they attempt to bind
the township by their action." This unquestionably is the
duty of supervisors before attempting to bind the township by
a contract of this nature. But when there was coupled with
this instruction as to the duty of supervisors the further in-
struction that " those who deal with the township supervisors
must take care to have the honest judgment of those to whom
is intrusted the transaction of the public business," a heavier
burden was put on the plaintiff than the law imposes. The
rule upon the subject, as stated in Cooper v. Lampeter Town-
ship, 8 Watts, 125, and ever since followed, is, that, in matters
of this nature, those who deal with such agents must take care
to have the " express consent of all to whom the law has in-
trusted the transaction of the public business."

In the recent case of Austin Manufacturing Co. v. Ayr

Township, 31 Pa. Superior Ct. 356, we considered this general subject at some length, and showed by the authorities, first, that the purchase of a road machine by township supervisors is a deliberative, as distinguished from a purely ministerial, act, and is governed by the general rule applying to such acts; second, that one supervisor cannot bind the township for the performance of a contract, the propriety of entering into which is the subject of deliberation and the exercise of judgment, and when the business requires deliberation, consultation and judgment all should be convened, because the advice and opinion of all may be useful, and though they do not unite in opinion, a majority may act when there are more than two; third, that a written order in the form of a conditional contract for the purchase of a road machine, to which the supervisors, without previous joint consideration or meeting for consultation on the subject, have been induced by the vendor or his agent to attach their signatures separately, imposes no obligation upon the township to take and pay for it. But under the theory upon which this case was submitted to the jury there is an additional essential to the validity of such a contract, the absence of which will defeat recovery even though the vendor has fully performed his part of the contract. This thought runs through the entire charge, and is very clearly expressed in the affirmance of the defendant's eighth point, which reads as follows : " The signing of the written order by the supervisors cannot bind the township of Union if the supervisors did not properly deliberate and honestly confer together as supervisors, and if the jury find that the order was signed by the supervisors without proper deliberation and a fair conference in which they exchanged views and interchanged ideas, their action cannot bind the township, and your verdict should be for the defendant." Whether or not this instruction would be appropriate in an issue between the township and the supervisors, wherein the township seeks to surcharge them for an improvident and inconsiderate exercise of their power, need not be decided in this case. It might be so, and yet be inappropriate in an action between the township and the vendor upon the contract. This distinction was considered and pointed out in the last cited case from which we quote : " When it is said that this is of a class of acts requiring consultation, de-

liberation and judgment, it is not implied that there must be debate or discussion in which every relevant consideration is brought into view; much less that a party who has parted with his property, or done work of which the township has the benefit, upon the contract of the two supervisors acting together, must fail in his action for the price unless he can show that there was such discussion, debate or interchange of views. What is implied is that the two supervisors shall meet in consultation upon the subject, so that there shall be afforded to each the opportunity of expressing to the other and obtaining from the other his advice and judgment upon the question, as well as the facts within his knowledge pertinent thereto." It results from the foregoing that if all of the supervisors met and consulted together, and then joined in the contract, the other party is not bound to show affirmatively that they did their full duty. If there be no fraud or collusion, and no conduct on his part by which he knowingly induced them to forego that deliberation and the exercise of that judgment and discretion in the interest of the township which the law requires of them, he has a right to act upon the presumption that they did their duty ; he is not bound to be present at their meeting and see that they did : Climax Road Machine Co. v. Allegheny Township, 10 Pa. Superior Ct. 437 ; Austin Mfg. Co. v. Ayr Twp., 24 Pa. Superior Ct. 91. We are of the opinion that these assignments must be sustained.

Judgment reversed and venire facias do novo awarded.