# Lengert *v.* Chaninel, Appellant.

*Mortgage—Affidavit of defense—Denial of liability.*

The Supreme Court will reverse an order making absolute a rule for judgment for want of a sufficient affidavit of defense, where the defendant denies the right of plaintiff to recover any sum whatever, and sets up as a defense fraud, failure of consideration and set-off; and this is the case, although the affidavit of defense may lack clearness and conciseness.

Argued Jan. 14, 1903. Appeal, No. 250, Jan. T., 1902, by William J. Chaninel, mortgagor, and Edward D. Chaninel, real owner, from order of C. P. No. 2, Phila. Co., Dec. T., 1901, No. 4198, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Michael A. Lengert *v.* William J. Chaninel and Edward D. Chaninel. Before MICHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Scire facias sur mortgage.

Rule for judgment for want of a sufficient affidavit of defense.

The defendants filed affidavits of defense in which they averred failure of consideration for which the mortgage was given, alleging that the consideration for which the mortgage had been given was to secure the payment to the mortgagee for 166 shares of the capital stock of the Lengert Company under an original tripartite agreement dated December 18, 1899, and a supplementary agreement between the same parties dated June 5, 1901. That the consideration therefor failed by reason of the fact that Lengert, who was the owner of said stock, had not paid the ten per cent in cash upon his original subscription as required by law, but had resorted to an artifice to withdraw $10,000, the amount of this subscription, in cash, and subsequently withdrew the balance of his said stock, some 600 shares,

of the value of $60,000, in real estate from the company, whereby the said 166 shares sold to the defendant became valueless.

William J. Chaninel filed a supplementary affidavit of defense, which was as follows:

1. That at the time of the organization of the company, to wit: on or about April 18, 1891, the plaintiff contributed to the real estate, machinery, stock, book accounts and plant for the organization of the company, the property then belonging to the said Lengert, and also agreed to pay in the ten per cent in cash necessary for the organization of the company. The arrangements for obtaining the said money in cash, were made by the plaintiff and his counsel, but the details of the negotiation with Meyers or with the bank were unknown to your deponent at the time. Your deponent was subsequently informed that the plaintiff had raised the $10,000 by a bond and mortgage for that amount secured upon the real estate in question and that the money had been deposited in the name of the treasurer of the company. When at the recorder's office at the time the certificate was signed deponent called the attention of the plaintiff and his counsel, who was also counsel for the company, that the incumbrances against the real estate were not mentioned in the certificate, your deponent was then advised by counsel for the company and the plaintiff that it was not necessary or proper to do so, that only the equity in the property was contributed and that it was entirely proper to omit them and your deponent relying upon and acting under the advice of counsel for the company signed the certificate of incorporation, believing the same to be entirely regular and in accordance with the law. That subsequently your deponent was elected secretary and at a meeting of the company held some thirty days thereafter the stockholders passed a resolution authorizing the payment of the $10,000 mortgage. All of which was done as far as your deponent is concerned under the advice of the counsel for the company, in whom your deponent placed implicit confidence, and upon whose advice your deponent is advised he had the right to rely without the slightest doubt at the time as to the entire regularity and integrity of the transaction, and your deponent received no portion whatever of the said $10,000, the entire amount having been paid over to the plaintiff.

Nor did your opponent know of or have reason to doubt the validity of the said transaction until after the sale to him of the said stock ten years after the subscription when your deponent then learned for the first time of the invalidity of the transaction under the following circumstances: Some time after the sale of the said stock and execution of the agreement therefor your deponent turned the papers over to his counsel along with other papers of the company coming into his hands and turned over to him after the retirement of the plaintiff from the company. Your deponent's counsel, after examination of the papers, designated the whole scheme as far as the payment of the money was concerned as a fraud and advised that the plaintiff was individually liable to the company for the amount and your deponent then learned for the first time of the unlawfulness of the transaction but did not learn until July 15, 1901, after the execution of both agreements, that these, the particular shares, viz: the 166 in question, were liable for such unpaid subscription.

2. That the said plaintiff upon his retirement from the company insisted upon withdrawing all of his capital in the company, $76,000, and in the settlement and all of the said stock held by him, it was considered, understood and agreed and withdrawn as full paid stock and your deponent had no knowledge at the time of the sale of the said stock to him that the effect of Lengert's withdrawal of the said 600 shares of the full par value was in effect to leave the said 166 shares unpaid and liable to forfeiture and valueless by reason of the said unpaid subscription, but the same was bought and sold expressly upon the understanding that the same was full paid and not subject to any lien, nor did your deponent by any agreement, express or implied, agree to pay the said $10,000, but purchased and the stock was sold as full paid.

3. That the plaintiff refused to perform his covenants and agreements under article seventh of agreement of June 5, 1901, Exhibit B, and although deponent vacated the premises, paid the rent and generally performed all of the covenants therein and then demanded the return of his securities and a release, plaintiff declined and refused to deliver his said three collateral notes for $6,000, the stock, the aforementioned 166 shares, until a long time thereafter, to wit: two months, and refused

to release deponent from his said contract of December 18, 1899, and still holds, in addition to the $5,000 bond accompanying the mortgage sued on, the said original bond for $5,000, the said three notes of $6,000, and ninety-nine shares of the stock, although the said agreement provided under article eighth that time should be of the essence of the agreement, and refused to deliver the said securities or any of them, except sixty-seven shares, and by such refusal and delay your deponent has suffered damage and loss by reason of being unable to raise money personally or upon his other stock in the said company by reason of the fact that no one would either invest money in the company or loan money to your deponent upon his other stock or interest in the company by reason of the said two contracts outstanding to the damage of your deponent in an amount more than the amount of this claim by depriving him of the use of his said property and impairing his credit by the dual obligations with their various collaterals, both of which contracts had been fully discharged.

4. That on or about July 20, your deponent demanded the return of the said ninety-nine shares, having performed all of the covenants and agreements and was thereto entitled and had an offer of sale for the same of $66.66⅔ per share by a trust company, in all $6,666, whereby your deponent lost the said sale, your deponent not knowing, however, at the time, of the fact that this particular 166 shares was subject to the unpaid subscription money, and which sale if this court is of the opinion that this particular stock is not subject to the lien of the said $10,000 subscription was entirely lost to your deponent and whereby he had lost the amount thereof and has the right to refuse to accept the said stock and did refuse to accept the same after plaintiff had refused to deliver as aforesaid and charge the plaintiff with the said price thereof.

5. That the plaintiff has not made nor can make proper transfer of the said 166 shares to your deponent either by the attempted transfer, to your deponent already made, or the transfer back to him as owner the title to the stock, then and now being in the said Lengert subject to the lien of his debt for subscription, $10,000 or at least $7,900, and no valid transfer can be made of the said stock, such transfer being subject to the provisions of the act of April 29, 1874, which directs that no certificate of stock

"shall be transferred so long as the holder thereof is indebted to the said company, unless the board of directors shall consent thereto," and the said board of directors neither can nor will assent to such transfer; the said debt being for the statutory subscription required by law cannot be released by them, and your deponent never having assumed the payment of the same but having purchased the said stock as full paid, no valid transfer can be made to him without the payment of the said debt of Lengert to the company.

Lastly. Your deponent is advised by counsel that having bought the said stock as full paid and having given this mortgage as a purchase money mortgage, therefore, he is entitled to set off the amount of the unpaid subscription therefor which is a lien against the said stock, and that in any event that being the only remaining consideration for the mortgage is an illegal and void consideration and as such there can be no recovery under the mortgage.

*Error assigned* was the order of the court.

*William S. Divine*, for appellant.

*Francis E. Bucher*, with him *W. H. G. Gould*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 30, 1903:

This action is a scire facias on a mortgage in which the mortgagor and his vendee are the defendants. The court below made absolute a rule for judgment for want of a sufficient affidavit of defense and entered judgment for the full amount of the plaintiff's claim. The defendants have appealed.

The affidavit of defense and supplemental affidavit of defense denied the right of the plaintiff to recover any sum whatever, and set up as a defense fraud, failure of consideration and set-off. While the affidavits are open to some of the many criticisms, notably a lack of clearness and conciseness, suggested in the argument of the learned counsel of the plaintiff, yet we think their averments are sufficient to send the case to the jury. We are satisfied from the allegations in the affidavits that a correct decision of the questions arising in the case requires a consideration of all the facts, and they can only be developed

and disclosed on a trial before a jury.  As said by the late Chief Justice GREEN in reversing the trial court for entering judgment for want of a sufficient affidavit of defense in Comegys v. Davidson, 154 Pa. 534: " We will not discuss or presume to decide the merits of the present case.  That can only be determined when all the facts are known.  But we are of opinion that the affidavits of defense disclose facts enough to carry the case to the jury. . . . We reverse the judgment of the court below to enable the defendant to lay his facts before a jury and have a judgment of the law upon them when they are all known."

The assignment of error is sustained, the judgment is reversed and a procedendo awarded.